MERCEDES AYMAT VDA. DE CARLO, demandante y recurrida, v. RICARTER [*sic*] TORO ASENCIO, demandado y recurrente. RICKARTER [*sic*] TORO ASENCIO, recurrente, v. EL REGISTRADOR DE LA PROPIEDAD DE SAN GERMÁN, recurrido.

*Números:* R-69-203, O-67-112        *Resueltos:* 23 de junio de 1970

*Enrique Báez García,* abogado del recurrente; *Frank Vizca-rrondo Vivas,* abogado de la recurrida.

El Juez Asociado Señor Hernández Matos emitió la opinión del Tribunal.

Consideramos dos recursos interpuestos por la misma persona, en los que está envuelto el mismo crédito hipotecario y en que se plantea idéntica cuestión prescriptiva.

El primer recurso, de revisión, lo originó una sentencia del Tribunal Superior, Sala de Mayagüez, que declaró con lugar una acción sobre el cobro y ejecución del crédito hipotecario, por la vía ordinaria. El segundo, es un recurso gubernativo motivado por una resolución del señor Registrador de la Propiedad de San Germán que denegó la cancelación de su inscripción, solicitádale al amparo del Art. 388-B de nuestra Ley Hipotecaria.

### Del Recurso de Revisión

El primero de noviembre de 1939, don José Toro Martínez y su esposa, dueños de una casa edificada en un solar del Municipio de Cabo Rojo, la hipotecaron para garantizar el pago de un préstamo por $1,000, sus intereses y costas judiciales, que les hizo don Miguel Carlo Pabón. El plazo acordado fue de dos años. Por haberse capitalizado los inte-

reses, se hizo constar que el principal garantizado ascendía a $1,240, y que devengaría interés al 9% anual desde el vencimiento hasta su total pago. Se inscribió el gravamen figurando esta suma de $1,240 como capital efectivo del crédito.

En febrero de 1946 falleció el acreedor hipotecario, bajo testamento, sobreviviéndole su viuda doña Mercedes Aymat y varios hijos. Formaba parte de los bienes relictos dicho crédito hipotecario, vencido desde el primero de noviembre de 1941, según el contrato. Fue satisfecha, a su tiempo, la contribución hereditaria.

En 28 de noviembre de 1946, por la escritura pública Núm. 207, del protocolo del Notario Miguel del Toro Colberg, los esposos Toro Asencio vendieron la finca urbana gravada a "Ricarter" Toro Asencio, por el precio de $4,000, del cual, en el acto de la venta, se dejó "en poder del comprador la suma de $1,000 para que éste cubra y pague la hipoteca a favor de Miguel Carlo Pabón que grava esta finca." El comprador no cumplió con este compromiso.

En 10 de enero de 1951, como nuevo dueño del inmueble hipotecado, don "Ricarter" Toro Asencio, mediante la escritura pública Núm. 152, otorgada ante el mismo notario, constituyó a favor de don Juan del Carmen Soto, una segunda hipoteca, sobre dicha finca, en garantía del pago de un préstamo por la suma de $3,000, sus intereses y costas judiciales. En el apartado Tercero de esa escritura hizo constar el hipotecante:

"... *Declara el exponente señor Toro Asencio* que su dicha finca urbana *se halla afecta a una primera hipoteca* constituída por sus anteriores dueños, los esposos Don José Toro Martínez y Doña Filomena Asencio Irizarry, a favor de Don Miguel Carlo Pabón, por la escritura número ciento cincuenta y dos, otorgada en Cabo Rojo con fecha primero de noviembre de mil novecientos treinta y nueve ante el Notario Don Miguel del Toro Colberg, originariamente por cantidad de mil doscientos cuarenta dólares, incluidos en dicho importe los intereses del préstamo al nueve

por ciento anual, por el término del contrato que lo fue de dos años, a contarse desde el otorgamiento de la escritura, pagadero dicho préstamo a razón de diez dólares mensuales al vencimiento de todos y cada uno de los veintitrés primeros meses y los mil diez dólares restantes al vencimiento de dicho plazo de dos años, ampliada a ciento veinte dólares más para intereses moratorios y a ciento veinticinco dólares más de crédito adicional para gastos, costas y honorarios de abogado en caso de reclamación judicial, con las demás condiciones que expresa la referida escritura por la que se constituyó dicha hipoteca y su inscripción en el Registro de la Propiedad;—*aclarando aquí el compareciente que esta hipoteca que se acaba de relacionar únicamente se halla vigente por la suma de mil dólares de principal, e intereses a devengarse al nueve por ciento anual hasta su total pago.*"— (Énfasis suplido.)

Fue también inscrita esta segunda hipoteca, haciéndose constar en el Registro de la Propiedad las declaraciones y aclaraciones hechas por el deudor hipotecante en la escritura de constitución del crédito.

El dinero de esa segunda hipoteca no fue usado por don "Ricarter" Toro Asencio para pagar, en todo o en parte, la deuda contraída en 1939 por sus padres, para cuyo pago él había recibido de éstos, en 1946, la suma de $1,000.

En la partición de la herencia del finado acreedor hipotecario don Miguel Carlo Pabón, dicho primer crédito hipotecario fue adjudicado a la viuda doña Mercedes Aymat. Por este título fue inscrito a su favor. No obstante las múltiples gestiones del cobro de la deuda hipotecaria que ella le hizo por conducto de un hijo, don "Ricarter" Toro Asencio no la satisfizo.

El 6 de noviembre de 1964, éste presentó al Registro una instancia para cancelar el crédito hipotecario por el transcurso de más de 20 años de su vencimiento, invocando el Art. 388-B de la Ley Hipotecaria. El 2 de febrero de 1965, el señor Registrador denegó la cancelación, por resolución que más adelante transcribiremos, contra la cual ningún recurso interpuso.

Doña Mercedes Aymat, viuda de Carlo, dedujo acción el 18 de enero de 1967, ante la Sala de Mayagüez, del Tribunal Superior, contra don "Ricarter" Toro Asencio, por la vía ordinaria, para el cobro del principal de $1,000 del crédito hipotecario, sus intereses y costas convenidas.

La última alegación de la demanda es como sigue:

"3—Que el referido crédito hipotecario pertenece en la actualidad a la aquí demandante, Doña Mercedes Aymat Vda. de Carlo, y a pesar de estar la referida hipoteca vencida desde hace muchos años todavía adeuda el demandado a la demandante la suma de $1,000.00 de principal de dicha deuda, más los intereses sobre dicha suma al 9% anual correspondientes a más de veinte años, *a pesar de las múltiples gestiones de cobro realizadas por la demandante por conducta de su hijo Miguel Carlo Aymat, para que se le pague la referida hipoteca y sus intereses.*" (Énfasis suplido.)

Contra la demanda formuló el deudor demandado una "Moción sobre Prescripción". En ella pidió su desestimación alegando que ". . . la demanda fue radicada 5 años, 2 meses, 18 días, después de vencido el término de 20 años señalado por el Código Civil para la prescripción de la acción hipotecaria." Discutida dicha moción, la Sala de Mayagüez la desestimó por resolución del 11 de diciembre de 1968, fundada en que la alegada prescripción había sido interrumpida por los diversos actos de reconocimiento de la deuda realizados en 1946 y 1951 por el propio deudor hipotecario.

El día 10 de enero de 1969 el demandado contestó la demanda en los siguientes términos:

"CONTESTACIÓN

.    .    .    .    .    .    .    .    .

1. *Que admite* que la hipoteca a que se refiere esta demanda fue constituída por escritura núm. 52 de 1ro. de noviembre de 1939 ante el Notario Miguel del Toro Colberg en la ciudad de Cabo Rojo.

2. *Que, asimismo, admite que desde que se otorgó la presente escritura hasta el presente nunca ni el deudor hipotecario*

*original ni el demandado han pagado cantidad alguna por con-
cepto de intereses,* encontrándose adeudando los mismos desde
que se constituyó la hipoteca el día 1ro. de noviembre de 1939
hasta el presente.

3. Que los intereses en el presente caso ascienden a la can-
tidad de $2,610.00, liquidados hasta el 1ro. de noviembre de
1968, más aquellos devengados desde el 1ro. de noviembre de
1968 hasta el presente, *pero están prescritos todos los que tenían
más de veinte años de vencidos y no habían sido pagados en la
fecha de la radicación de la demanda.*

POR TODO LO CUAL se suplica a este Hon. Tribunal que, *con
vista de estas alegaciones, dicte la sentencia que proceda en
derecho."* (Énfasis suplido.)

Al llamarse el caso para juicio en sus méritos el 25 de
marzo de 1969, las partes lo sometieron para su resolución
por las alegaciones y cierta evidencia documental que había
sido admitida al discutirse la cuestión prescriptiva.

El primero de julio de 1969, el tribunal de instancia,
luego de formular determinaciones de hecho y conclusiones
de derecho, dictó la siguiente:

### "SENTENCIA

Por todo lo cual se declara con lugar la demanda conde-
nando al demandado a pagar a la demandante la suma de $1,000
de principal requerido en la demanda, más $2,017.50 de intereses
vencidos y no pagados sobre dicha deuda a partir de enero de
1947 hasta el presente y $125.00 por concepto de costas y
honorarios de abogado convenidos en la escritura de hipoteca
para el caso de reclamación judicial, ordenándose que de no
pagar la parte demandada a la demandante las cantidades antes
especificadas se proceda a la venta en pública subasta de la
finca hipotecada descrita en esta sentencia por el montante de
la totalidad adeudada por el demandado y cualesquiera otros
créditos preferentes."

En revisión sostiene únicamente el demandado que la
Sala sentenciadora erró

". . . al declarar sin lugar la moción de prescripción pre-
sentada por el demandado recurrente, a pesar de que la acción

estaba prescrita por disposición de los Artículos 1864 del Código Civil (1930) y 134 de la Ley Hipotecaria de Puerto Rico."

El tribunal de instancia al resolver, adversamente al demandado, la defensa de prescripción, se expresó así:

"De los autos y la prueba surge que la hipoteca se constituyó el 1ro. de noviembre de 1939 y que venció el 1ro. de noviembre de 1941. La demanda se radicó el 18 de enero de 1967.

Surge además de la prueba lo siguiente: (1) En la inscripción vigésima de la finca practicada en el Registro de la Propiedad de San Germán el 18 de enero de 1947 en virtud de la cual adquirió el actual dueño de la finca, demandado en este caso, por compra a los deudores originales en la hipoteca a que se contrae el presente litigio se hizo constar lo siguiente: 'Esta venta se verifica por la suma de $4,000.00, la finca de este número y ambas por $5,500.00, de cuya suma total el vendedor deja en poder del comprador la suma de $1,000.00 para que éste cubra y pague la hipoteca a favor de Miguel Carlo Pabón que grava esta finca.' (2) Posteriormente y en 10 de enero de 1951 el demandado Ricarter Toro Asencio constituyó una hipoteca a favor de Juan del Carmen Soto por escritura pública en la que se hace constar que la 'hipoteca a favor de Miguel Carlo Pabón únicamente *se halla vigente* por la cantidad de $1,000.00 de principal.'

A juicio del Tribunal estas actuaciones constituyen actos de reconocimiento de la deuda por parte del deudor hipotecario que interrumpieron el término prescriptivo de 20 años del Art. 1864 del Código Civil en relación con el 1873 del mismo cuerpo legal.

El término de 20 años que el Art. 1864 del Código Civil concede al acreedor hipotecario para que pueda exigir por la vía judicial el pago de la obligación, solo puede ser interrumpido por el ejercicio de una acción judicial, por reclamación extrajudicial del acreedor o por cualquier acto de reconocimiento de la deuda por el deudor; Soto v. Registrador, 51 D.P.R. 236.

Habiendo quedado interrumpida la prescripción extintiva de la acción hipotecaria en el 1947 y 1951 ésta no está prescrita, por lo que se declara SIN LUGAR la moción sobre prescripción radicada por el demandado."

En su alegato arguye el recurrente:

"La cuestión a determinar es si habiendo vencido la hipoteca el 1ro. de noviembre de 1941, sin que se hicieran gestiones de cobro ni se pagaran intereses, estaba o no prescrita cuando se radicó la demanda en este caso el 18 de enero de 1967. Entre el 1ro. de noviembre de 1941 y el 18 de enero de 1967 transcurrieron más de 25 años."

Hace referencia a los Arts. 1864 del Código Civil y 134 de la Ley Hipotecaria, el primero de los cuales establece que "la acción hipotecaria prescribe a los 20 años", y, el segundo también establece que prescribirá a los 20 años, "contados desde que pueda ejercitarse con arreglo al título inscrito." Cita el Art. 1873 del Código, precepto fundamental para la decisión del recurso, cuyo texto es:

"La prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de la deuda por el deudor."

Expone el recurrente que no se produjo interrupción alguna porque: a) la demanda fue radicada después de transcurrido completamente el plazo prescriptivo, b) la demandante no aportó prueba de reclamaciones extrajudiciales del acreedor . . . y no existen presunciones en ley ni hay inferencias del récord de que se hicieran reclamaciones extrajudiciales y c) los actos realizados por el deudor hipotecario en 1946 y 1951, en que fundó el juez su criterio de imprescripción, "no constituyen el reconocimiento de la deuda a que se refiere el artículo 1873 del Código Civil."

■ No tiene razón el deudor demandado recurrente. La acción hipotecaria ejercitada el 18 de enero de 1967, siempre se mantuvo viva desde el 1ro. de febrero de 1940, fecha en que, "conforme al título inscrito," pudo ejercitarse, por la falta del pago de las primeras tres de las 24 mensualidades en que se dividió el pago del capital garantizado. (¹)

---

(¹)*Sucrs. de Huertas González* v. *Díaz,* 72 D.P.R. 537, 542 (1951).

En el caso de autos, la prescripción empezó a correr en ese día 1ro. de febrero de 1940. Su curso no fue constante, ni libre de impedimentos. Ni el acreedor y sus herederos, ni el deudor hipotecante ni el posterior adquirente de la finca gravada permanecieron inactivos respecto a la deuda durante los 20 años siguientes. Por lo menos, en cuatro ocasiones determinadas, dentro del respectivo plazo prescriptivo, la prescripción fue eficazmente interrumpida.

■ La primera vez, el 28 de noviembre de 1946—a los 6 años, 9 meses—por expreso y solemne reconocimiento de la deuda por el señor Toro Asencio. La segunda, el 10 de enero de 1951—a los 4 años, 1 mes del segundo período— por otro expreso y público reconocimiento del propio señor Toro Asencio. La tercera, durante los años 1964 a 1967— a los 13 años del tercer período empezado en enero de 1951— por las admitidas múltiples gestiones de cobro de la deuda realizadas por la acreedora. La cuarta y última ocasión, el 18 de enero de 1967—16 años de la segunda interrupción y poco después de las múltiples gestiones de cobro—por la formal radicación ante el Tribunal Superior de la demanda en cobro de la hipoteca, por la vía real ordinaria, en contra del deudor hipotecario Toro Asencio.

Por el juego de esas manifiestas e innegables interrupciones jamás llegó a ganarse, cumplirse, consumarse o a producirse en su integridad, la prescripción extintiva del crédito hipotecario. (²)

---

(²) Mucho se ha debatido sobre la extinción de derechos y acciones por el paso del tiempo. No hay acuerdo sobre si realmente prescriben aquéllos o las acciones correspondientes para hacerlos efectivos, o si, subsistiendo unos y otras, la llamada prescripción de los mismos, consiste sólo en que la Ley faculta al sujeto pasivo para que, amparándose en el transcurso del tiempo, se niegue a hacer lo que debe, cuando se le reclame pasado el tiempo de prescripción. Muchos juristas, entre ellos el barcelonés Albaladejo, opinan que esta última es la tesis acertada, ya que al pasar cierto tiempo inactivo del derecho la Ley lo deja a la buena voluntad del sujeto pasivo, retirando al titular el poder de imponerlo a aquél.

Trataremos, en primer término, de la tercera causa interruptora prevenida en el Art. 1873, es decir, "por cualquier acto de reconocimiento de la deuda por el deudor."

■ La voz "cualquier", pronombre indeterminado que no se emplea sino antepuesto al nombre, significa, según el Diccionario de la Lengua Española, "alguno, sea el que fuere."

En la exposición de la doctrina en torno al Art. 1973 español, del que se tomó el 1873 nuestro, el Magistrado del Tribunal Supremo de España, Francisco Bonet Ramón, en su *Código Civil Comentado*, 1962, dice:

"Al decir 'cualquier acto' el art. 1973 indica no ser un acto de determinada naturaleza, sino que basta cualquier conducta del sujeto pasivo de la cual resulte, directa o indirectamente, su conformidad con la existencia de la pretensión."

Hemos examinado los comentarios sobre ese tercer medio de detener en su marcha la prescripción extintiva. Expon-

---

Afirma Roca Sastre que el plazo vigesimal señalado en los artículos correspondientes del Código y de la Ley, es el de la prescripción del crédito hipotecario, no el de la hipoteca aisladamente considerada, ni la del *crédito* en sí. Dice también, citando a De Buen, que esas disposiciones consonantes deben entenderse en el sentido de que el *crédito garantizado con hipoteca* prescribe a los veinte años y que no significan que haya una prescripción de la acción hipotecaria distinta a la del crédito garantizado por la hipoteca. *Derecho Hipotecario*, Tomo IV-2do., pág. 1134, 6ta. Ed. Bosch, 1968.

La prescripción de la obligación personal dineraria en sí, es de 15 años; la de sus intereses, por años o en plazos más breves, según el Art. 1866 del Código, de 5; la de la hipoteca, como derecho real de garantía, sería de 30 años, según su Art. 1863. Un crédito mercantil con hipoteca prescribe a los 20 años, aunque su acción personal prescriba a los 3. *Santini, etc.* v. *Albert Lee & Son*, 44 D.P.R. 223, 227 (1932). Cuando estos ingredientes de obligación personal y garantía real se funden para integrar la figura compleja o en bloque que es el *crédito* hipotecario, entonces no existe nada más que un plazo común para la ejecución y cobro hipotecarios, el de 20 años.

Desde el 1907, en *Altuna* v. *Ortiz, et al.*, 12 D.P.R. 332, 341, tenemos resuelto el punto. Decidimos allí que las obligaciones derivadas del contrato de hipoteca, según el Art. 1865 del Código—hoy 1864—"duran veinte años, plazo de duración que debe entenderse, *no sólo para el cobro de la deuda principal, sino también para el de los intereses*, que se cobran también por la misma acción real hipotecaria. . . ."

dremos en síntesis, la posición de cuatro juristas españoles respecto a esa materia.

Scaevola: En su obra *Código Civil*, Tomo XXXII, vol. II (1965), págs. 943–981, entre otras cosas, nos dice: Basta con que el deudor reconozca el derecho ajeno, bien expresa o tácitamente; si *el acto reconocedor emana del deudor*, ello es lo que constituye la "inequivocidad" del acto; el reconocimiento del deudor puede tener lugar en cualquier momento, aunque el crédito ya hubiere prescrito; la eficacia del reconocimiento está *en el acto de reconocer* más que en la efectiva interrupción que del reconocimiento deriva; el mismo deudor puede evitar ese transcurrir del tiempo, frente a la inactividad del titular del derecho *reconociendo la vigencia* de éste; *importa el contenido del reconocimiento expreso o tácito*, no el medio de producirlo; no debe caber duda de que el *prescribiente reconoce la existencia del derecho*; ha de ser espontáneo.

"Por lo demás, *cualquier acto válido y que efectivamente implique la conformidad absoluta con el derecho del acreedor*, podrá interrumpir la prescripción de éste. Es válida al respecto, la explicación de Enneccerus: '*no se requiere un contrato de reconocimiento, ni siquiera una declaración con carácter de negocio jurídico de la voluntad de reconocer*, sino que basta *una conducta con relación al acreedor de la cual se deduzca que al deudor le consta su obligación.*'

*No es menester* que el reconocimiento indique la causa y el importe de la deuda, *bastando con que se designe ésta de modo que pueda ser identificada.*"

Debe el reconocimiento *acatar la supervivencia o exigibilidad del crédito o deuda precedente que se reconoce*, y no suponer la constitución de una relación jurídica nueva.

■ *La asunción de la deuda es un reconocimiento*, según Scaevola. Ya hemos visto que la asunción de la deuda fue inscrita en el Registro de la Propiedad y que los herederos del acreedor le hicieron al deudor señor Toro Asencio múltiples gestiones de cobro.

■ El reconocimiento de la deuda *es un acto unilateral
del deudor* y de carácter abstracto, que interrumpe la obli-
gación punitiva. No tiene que ser un acto bilateral, entre
acreedor y deudor, porque entonces, ello "puede implicar la
extinción de ésta [la deuda] *y su sustitución por otra*, de
título obligacional diferente, aunque ambas manifestaciones,
deriven de una misma relación jurídica inicialmente concer-
tada."

Manresa, en su obra *Comentarios al Código Civil Espa-
ñol*, Tomo XII, ed. 1951, págs. 954 a 961.

Revela su voluntad contraria a la caducidad de la obliga-
ción quien reconoce la deuda de su cumplimiento; es suficiente
*cualquier acto que demuestre la conformidad implícita con
la subsistencia de la obligación.*

". . . los propios términos del artículo citado [1973 español,
1873 nuestro] demuestran que basta para interrumpir la pres-
cripción de acciones cualquier acto de reconocimiento de la
deuda, *cualquiera que sea su clase y no se diga que la ley*
emplea la palabra acto al tratar del reconocimiento de la
obligación para demostrar con ello la necesidad de que éste
sea expreso, fundado en que todos los actos humanos son o
deben ser producto de una voluntad conforme con su fin y con
su objeto, pues el argumento que en dicha consideración pre-
tendiera fundarse caería por su base, teniendo en cuenta que
hay actos de reconocimiento que pueden no ser debidos a una
expresa manifestación de la voluntad en dicho sentido.

Conforme con nuestra opinión *se halla la de todos los ex-
positores y comentadores del derecho vigente*, y, por tanto, no
creemos posible la duda sobre ello; pero por si contra lo que
suponemos, llegara a suscitarse en la doctrina cuestión alguna
acerca de este punto, hemos creído necesario hacer las indica-
ciones que preceden, las cuales consideramos que son suficientes
para establecer la verdadera y exacta inteligencia del precepto
indicado."

Castán en su obra *Derecho Civil Español, Común y Foral*,
Tomo I, vol. II (1955).

"Este reconocimiento debe hacerse mediante un acto que tenga la trascendencia de acto propio del que lo reconoce; por lo cual ha de ser lícito, consciente, libre, *que demuestre la voluntad de reconocer el derecho del acreedor*, y puede hacerse por una confesión explícita y directa mediante la realización de algún *acto que implique el reconocimiento* del mismo; . . . .

El Código permite interpretar *con amplitud esta causa de interrupción,* toda vez que la extiende *a cualquier acto de reconocimiento* de la deuda por el deudor.

El reconocimiento ¿puede ser tácito? El art. 1973 no lo dice expresamente, como lo hace el art. 1948 respecto a los actos de interrupción de la posesión, al efecto de la usucapión; pero siendo la razón la misma y dada la amplitud de criterio que manifiesta el primero de los artículos citados, es lógico aplicar la misma regla, como opina Manresa. Una S. de 30 de enero de 1918 declaró *que las cesiones sucesivas de un crédito consignados en las escrituras correspondientes, inscritas en el Registro de la Propiedad imposibilitan la prescripción de la acción para reclamar su pago,* una vez cumplida la condición de que estaba pendiente su exigibilidad. . . ."

Diez Picazo, *La Prescripción en el Código Civil,* ed. Bosch, 1964, págs. 39–137.

"La usucapión piensa siempre en el poseedor: sólo la cesación o la privación de la posesión altera la situación de éste. *La prescripción extintiva piensa siempre en el titular del derecho:* cualquier actividad le beneficia.

Las mismas ideas me parecen aplicables a la hipótesis del artículo 1973. Cuando el Código dice 'cualquier acto de reconocimiento de la deuda por el deudor' interrumpe la prescripción, no está haciendo referencia a un acto o negocio jurídico de naturaleza especial, como puede ser un negocio jurídico de fijación de la relación obligatoria controvertida o como puede ser también un acto de confesión extrajudicial de la deuda. Lo que quiere decir es que no puede lícitamente invocar la prescripción aquel deudor que con sus palabras o por medio de una *conducta concluyente ha afirmado la existencia y la vigencia del derecho del acreedor.* No hay, pues, una naturaleza jurídica unitaria y homogénea para el acto de reconocimiento. Hay, únicamente, una serie de actos que poseen un valor confesorio o, quizá mejor, una serie de actos con los cuales la persona no puede

214

ponerse en contradicción invocando la prescripción de la acción dirigida contra ella. Más claramente: si lo que se sanciona mediante la prescripción es la inadmisibilidad de una pretensión tardía e intempestiva, *lo que ocurre es que, cuando el sujeto pasivo ha demostrado con su conducta conocer y esperar la pretensión, ésta ya no es, por la misma razón, tardía, no hay ningún fundamento para condenarla, ni para proteger la situación de confianza que en él podía haber creado el silencio* del titular del derecho.

b) Reconocimiento expreso y tácito. . . . El reconocimiento es expreso cuando es realizado por medio de una declaración de voluntad del sujeto pasivo del derecho. *No es necesario que esta declaración de voluntad haya sido emitida con el deliberado propósito de reconocer el derecho, ni mucho menos con el fin de interrumpir la prescripción.* El acto se toma en su consideración objetiva cualquiera que haya sido el propósito, la intención o la finalidad que lo haya guiado. Es admisible, pues, desde este punto de vista, como reconocimiento, *una mención incidental o indirecta del derecho en un documento, acto o negocio realizado con un fin distinto.*

Por reconocimiento tácito, como he dicho ya, no se entiende el acto que necesariamente entraña la voluntad de reconocer, *sino todo comportamiento* que, objetivamente interpretado de una manera razonable, conduzca a la conclusión de que el ejercicio de la excepción de prescripción no es conforme con la buena fe." (Énfasis suplido.)

*Nuestra Jurisprudencia*

En muchas ocasiones este Tribunal ha citado, interpretado o aplicado el Art. 1873 de nuestro Código Civil. (³)

---

(³)*Diez y Arrarás* v. *Bascos*, 5 D.P.R. 97 (1904); *La Iglesia Católica* v. *El Pueblo*, 11 D.P.R. 470, 527 (1906); *Felici* v. *Ribas*, 11 D.P.R. 539 (1906); *Altuna* v. *Ortiz et al.*, 12 D.P.R. 332, 341 (1907); *Sucn. Jiménez* v. *Ahumada*, 14 D.P.R. 295 (1908); *Gual* v. *Bonafoux et al.*, 15 D.P.R. 559, 563 (1909); *González* v. *San Juan L. & T. Co.*, 17 D.P.R. 124, 134 (1911); *Carmona* v. *Cuesta*, 20 D.P.R. 229, 236 (1911); *Orta* v. *Arzuaga et al.*, 23 D.P.R. 259, 267 (1915); *Berríos* v. *Dávila*, 28 D.P.R. 821 (1920); *Diez* v. *Green*, 32 D.P.R. 814 (1923); *De Jesús* v. *De Jesús*, 37 D.P.R. 152 (1927); *Quiñones* v. *Central Eureka, Inc.*, 37 D.P.R. 270, 274 (1927); *Cortés* v. *Valdés*, 43 D.P.R. 192 (1932); *Sucn. Gorbea* v. *Portilla*, 46 D.P.R. 288 (1934); *Montalvo* v. *Franceschi*, 48 D.P.R. 313

Nunca ha intentado, porque es casi imposible, hacer un católogo de todo acto que el ser humano, o el jurídico en su caso, puede realizar y que pueda comprenderse dentro del amplísimo lenguaje en que se expresa su última causa de interrupción, es decir: *"cualquier acto de reconocimiento de la deuda por el deudor."*

No se ha sentido autorizado para decidir, a la luz de tal lenguaje, que el acto de reconocimiento de la deuda por el deudor, debe ser necesariamente *configurado* como un negocio jurídico de naturaleza especial, o que indispensablemente entrañe una voluntad de reconocer o un designio o propósito deliberado y preciso de interrumpir la prescripción, no ha fijado una naturaleza jurídica unitaria y homogénea para el acto de reconocimiento. Tampoco ha resuelto que el acreedor debe intervenir en el acto o debe aceptarlo, porque entonces se dejaría su eficacia a voluntad y capricho del acreedor.

Dijo en *Soto* v. *Registrador*, 51 D.P.R. 236 (1937), que la cesión de un crédito hipotecario a un tercero, sin la intervención o anuencia expresa del deudor, no es un acto de reconocimiento de la deuda por el deudor. No se podía decidir otra cosa, pues se trata de *un acto del acreedor*, y éste no

(1935); *Soto* v. *Registrador*, 51 D.P.R. 236 (1937); *Carbó* v. *Portilla*, 53 D.P.R. 703 (1938); *González* v. *Marrero*, 55 D.P.R. 842 (1940); *Ortiz* v. *McCormick Steamship Co.*, 57 D.P.R. 560, 562 (1940); *San Miguel, etc. & Cía.* v. *Guevara*, 64 D.P.R. 966 (1945); *Jiménez* v. *Corte*, 65 D.P.R. 37 (1945); *Cruz* v. *González*, 66 D.P.R. 212 (1946); *Suárez* v. *Pereira*, 66 D.P.R. 236 (1946); *Bithorn* v. *Santana*, 68 D.P.R. 300 (1948); *Del Río* v. *García*, 70 D.P.R. 401 (1949), 71 D.P.R. 93 (1950); *Sucrs. de Huertas González* v. *Díaz*, 72 D.P.R. 537 (1951); *Fuentes* v. *Tribunal de Distrito*, 73 D.P.R. 959 (1952); *Cordero* v. *Rivera*, 74 D.P.R. 586, 591 (1953); *Rossy* v. *Tribunal Superior*, 80 D.P.R. 729 (1958); *Eisele* v. *Orcasitas*, 85 D.P.R. 89 (1962); *Baldrich* v. *Registrador*, 86 D.P.R. 42, 50, 61 (1964); *Casa Jaime Corp.* v. *Castro*, 89 D.P.R. 702 (1963); *Secretario del Trabajo* v. *Tribunal Superior*, 91 D.P.R. 856, 863 (1965); *Jiménez y Salellas, Inc.* v. *Maryland Cas. Co.*, 92 D.P.R. 207 (1965); *Ortiz Rivera* v. *Sucn. González Martínez*, 93 D.P.R. 562, 585 (1966); *Feliciano* v. *A.A.A.*, 93 D.P.R. 655 (1966); *Rosario Crespo* v. *A.F.F.*, 94 D.P.R. 834, 842 (1967).

puede a su arbitrio interrumpir la prescripción cada vez que lo desee por el simple y cómodo medio de una cesión del crédito en que no intervenga el deudor o al que no preste su anuencia. Sin embargo, observamos que Castán hace referencia a una sentencia del Tribunal Supremo español de 30 de enero de 1918 en que se concedió efecto interruptor a unas cesiones de un crédito hipotecario.

Lo que sí podemos afirmar es que jamás a este Tribunal se le había presentado no uno, sino varios, actos de reconocimiento de la deuda por el deudor, tan propios, claros, manifiestos, auténticos e inequívocos como los del presente caso.

Desde luego, no debemos olvidar que los casos señalados por el Art. 1873, implican excepciones a la regla general declarada en el Art. 1861, que dispone que las acciones prescriben por el lapso del tiempo fijado por la ley. Por la inseguridad que significaría para la existencia y virtualidad de los derechos y acciones, no deben considerarse aptos para la función interruptora a todo tipo de acto, sin importar quién lo ejecuta, cuándo se realiza y cuál es la acción o derecho envuelto.

■ Estimamos por ello, que para determinar la suficiencia o aptitud interruptora del acto, debe observarse si están o no presentes las siguientes condiciones:

A—Que se haya ejercitado la acción determinada a que se refiere el plazo prescriptivo señalado por ley.

B—Que el acto de reconocimiento de la existencia de la deuda reclamada haya sido realizado por el propio deudor, con plena capacidad para obrar, o por medio de su representante legal o mandatario con facultades suficientes para realizarlo.

C—Que dicho acto sea lícito, no contrario a las leyes, a la moral, ni al orden público.

D—Que el acto sea libre y voluntario.

E—Que se haya realizado el acto de reconocimiento dentro del período prescriptivo.

■ En el caso de autos todas estas condiciones están obviamente presentes. La acción ejercitada es la llamada acción mixta, es decir la real y personal, del cobro y ejecución de un crédito hipotecario, a que se refieren los Arts. 1864. del Código y 134 de la Ley Hipotecaria.

Los actos de reconocimiento de la deuda fueron personalmente realizados por el deudor hipotecario demandado en el curso de los otorgamientos públicos y solemnes de dos escrituras públicas, ante notario y testigos, siendo él de profesión comerciante, hombre de negocios, con capacidad legal suficiente para obrar en tales otorgamientos, de lo cual dio fe el Notario.

Esos actos fueron lícitos, no contrarios a la ley, ni a la moral, ni al orden público, libres, voluntarios y realizados dentro del respectivo plazo prescriptivo.

En forma cronológica, intentaremos hacer un análisis o juicio valorativo a fondo, con sentido objetivo, de los actos y hechos realizados por las partes interesadas en tales relaciones jurídicas, de sus individuales conductas frente a las obligaciones y deberes que las mismas respectivamente les concedía e imponía, a partir del 1ro. de febrero de 1940 fecha del vencimiento anticipado del crédito hipotecario, hasta el 25 de junio de 1969, día de la celebración del juicio.

### *Primer Reconocimiento de la Deuda por el Deudor*

Sabemos que la hipoteca se constituyó el 1ro. de noviembre de 1939, por el comerciante don José Toro Martínez y su esposa Filomena Asencio Irizarry, a favor de don Miguel Carlo Pabón, casado con doña Mercedes Aymat.

Según resulta *del título de constitución* del crédito hipotecario, el gravamen se constituyó:

"C.—Para garantizar dicho préstamo principal *por mil doscientos cuarenta dólares,* incluso sus intereses estipulados, más los moratorios en su caso hasta la suma de ciento veinte dólares. . . ."

La deuda garantizada con hipoteca se pagaría, con arreglo a la cláusula "A" del contrato:

". . . dentro de dicho término o plazo de dos años a contarse desde este otorgamiento, en la siguiente proporción y forma de pago: diez dólares ($10.00) al vencimiento de todos y cada uno de los veintitrés primeros meses y los mil diez dólares ($1,010.00) restantes al vencimiento del vigésimo cuarto mes. . . ."

Luego se estipula el vencimiento anticipado por el vencimiento y no pago de "tres mensualidades consecutivas".

Conforme a la certificación registral admitida en evidencia, en la inscripción 17ma. de la finca urbana gravada, se hizo constar que se constituyó esa primera hipoteca;

". . . en garantía de un préstamo *por Mil Doscientos Cuarenta Dólares,* según resulta de la escritura número ciento cincuentidós otorgada en Cabo Rojo, a primero de noviembre de mil novecientos treinta y nueve. . . ."

El 28 de noviembre de 1946, ya fallecido el acreedor hipotecario don Miguel Carlo Pabón, el deudor hipotecante y su esposa vendieron a su hijo "Rickarter" Toro Asencio, comerciante como ellos, la propiedad gravada y otra finca y, según la citada certificación, en la escritura pública de venta se hizo constar:

"Esta venta se verifica por la suma de $4,000.00, la finca de este número y ambas por cinco mil quinientos dólares, de cuya suma total el vendedor *deja en poder del comprador* la suma de $1,000.00, para que éste cubra y pague la hipoteca a favor de Miguel Carlo Pabón que grava esta finca."

### Segundo Reconocimiento

Para el 10 de enero de 1951, no se había satisfecho a la sucesión del acreedor don Miguel Carlo Pabón la hipoteca, no obstante haberse dejado en poder del señor Toro Asencio la suma de $1,000.00 para ello al otorgarse la escritura Núm. 207 de 1946.

El 10 de enero de 1951, el deudor solicita y obtiene de don Juan del Carmen Soto un préstamo por $3,000.00, garantizado con segunda hipoteca sobre la casa hipotecada. *Recibe toda esa nueva suma, pero tampoco se ocupa de pagar la primera hipoteca contraída por sus padres.* Ni la paga, ni intentó pagarla, con la buena moneda acordada en aquella escritura.

Se formaliza esta segunda hipoteca por la escritura Núm. 5, otorgada en Cabo Rojo, el 10 de enero de 1951. Afirmó en ella el notario autorizante que las partes, a su juicio, tenían "la capacidad legal necesaria para este otorgamiento" y que "en tal virtud el compareciente señor Toro Asencio, libremente expone:".

En el párrafo *Primero* expositivo expuso don "Ricartter" "que es dueño de la siguiente finca:". A continuación se describe la finca urbana sita en la calle Carbonell de Cabo Rojo, que compró en 1946 a sus padres, en parte con dinero de don Miguel Carlo Pabón.

En el párrafo *Segundo* es el *Notario* Miguel A. del Toro, quien expone cómo adquirió el señor Toro Asencio el inmueble, según la escritura Núm. 207 de 1946 "copia auténtica de la cual se me exhibe", y señala el tomo y folio de su inscripción registral.

Pero, en el párrafo *Tercero no es el Notario el que se expresa, habla o se manifiesta.* Es el propio señor comerciante Rickártter Toro Asencio, en la siguiente forma:

"TERCERO

". . . Declara el exponente Señor Toro Asencio que su dicha finca urbana se halla afecta a una primera hipoteca constituída por sus anteriores dueños, los esposos Don José Toro Martínez y Doña Filomena Asencio Irizarry, a favor de Don Miguel Carlo Pabón, por la escritura número ciento cincuenta y dos, otorgada en Cabo Rojo con fecha primero de noviembre de mil novecientos treinta y nueve ante el Notario Don Miguel del Toro Colberg, originariamente por cantidad de mil doscientos cuarenta dólares, incluidos en dicho importe los intereses del prés-

tamo al nueve por ciento anual, por el término del contrato que lo fue de dos años, a contarse desde el otorgamiento de la escritura, pagadero dicho préstamo a razón de diez dólares mensuales al vencimiento de todos y cada uno de los veintitrés primeros meses y los mil diez dólares restantes al vencimiento de dicho plazo de dos años, ampliada a ciento veinte dólares más para intereses moratorios y a ciento veinticinco dólares más de crédito adicional para gastos, costas y honorarios de abogado en caso de reclamación judicial, con las demás condiciones que expresa la referida escritura por la que se constituyó dicha hipoteca y su inscripción en el Registro de la Propiedad;— *aclarando aquí el compareciente que esta hipoteca que se acaba de relacionar únicamente se halla vigente por la suma de mil dólares dè principal, e intereses a devengarse al* nueve por ciento anual *hasta su total pago.*" (Énfasis suplido.)

Al final del documento hace constar el Notario que el comerciante don Rickártter Toro Asencio, luego de leída la escritura, la encuentra redactada conforme a lo *expuesto por él* y que *se ratifica "en su contenido."*

En esa clara e inequívoca expresión, hecha ante un Notario, ante el nuevo prestamista y ante dos testigos, *por su cuenta, deseo y libérrima voluntad,* el entonces dueño de la finca hipotecada y deudor de la sucesión Carlo Pabón, realiza un reconocimiento pormenorizado de la existencia de la deuda hipotecaria, que, con rango de primer gravamen, afectaba la finca con la cual garantizaría el nuevo préstamo, describiendo y enumerando minuciosamente, el nombre de las personas que la contrajeron, el acreedor, número, fecha y notario de la escritura de la primera hipoteca, que la misma se constituyó *"originalmente por cantidad de dos mil doscientos cuarenta dólares,* incluidos en dicho importe los intereses del préstamo al nueve por ciento anual"; la forma de su pago, y que el último pago sería de *"mil diez dólares"*; las ampliaciones de la garantía hipotecaria a los créditos adicionales "para intereses moratorios" y para gastos, costas y honorarios de abogados.

.

Ese es el preciso y exacto reconocimiento de la existencia de su deuda hipotecaria, que hizo entonces el deudor. Repetimos, *no fue el notario* quien la hizo.

Empero, el señor deudor Toro Asencio no se contentó sólo con reconocer tan minuciosamente la existencia de su deuda hipotecaria,—acto que manifiestamente constituye la tercera causa interruptora prevenida en el Art. 1873 del Código—sino que, va más lejos en su evidente intención, deseo y voluntad de reconocer y exponer el estado, *en esa fecha del 10 de enero de 1951*, de su deuda hipotecaria preexistente, y, declara en ese mismo párrafo Tercero, adicionalmente, lo siguiente:

". . . *aclarando* aquí el compareciente que esta hipoteca que se acaba de relacionar (1) únicamente *se halla vigente* por la suma de *mil dólares* de principal, (2) e intereses *a devengarse* al nueve por ciento anual (3) hasta su total pago."

Reconoce paladinamente que la hipoteca que relaciona se halla vigente. Esa declaración la hace a los once años de haberse vencido la hipoteca y a los cuatro años de asumir su pago al comprar. Al decir que "*se halla vigente*", reconoce que está en vigor y no se halla cancelada, que como dueño del inmueble gravado la debe y está obligado a pagarla.

Al aclarar "por la suma de mil dólares de principal," cuando en el mismo párrafo Tercero había declarado que se constituyó "originalmente por cantidad de mil doscientos cuarenta dólares", es fijar un monto del principal *distinto al que figura en la escritura de constitución de hipoteca y en el Registro*. Hace, por primera vez, un balance del principal. En vez de $1,240.00, "aclara" que adeuda sólo $1,000.00.

Al "aclarar" que la hipoteca únicamente "se halla vigente", en cuanto a los "*intereses a devengarse*", reconoce que los intereses hasta ese día 10 de enero de 1951, estaban pagados y no se debían; no podía tener esa expresión otro designio que no fuera que el nuevo acreedor señor Soto

222

supiera que él, el deudor hipotecario, había pagado todos los intereses devengados hasta esa fecha, y que sólo tenía que satisfacer los intereses "*a devengarse*" hasta el total pago de la deuda. Equivalía decir que él era un deudor responsable.

Esa fue su expresión documental, terminante e inequívoca; que facilitaba que el nuevo acreedor le prestara $3,000.00. Si el capital de la primera hipoteca estaba reducido a $1,000 y no se adeudaban intereses, la propiedad gozaba de un margen prestatario de $5,000 ya que en esa escritura se le dio un valor de $6,000 para el caso de su venta en pública subasta, en la cláusula "F".

Hace tal "aclaración" cuando, en esa fecha, el balance real y efectivamente adeudado era $1,240 de principal y $1,116 de intereses por los diez años transcurridos desde el vencimiento contractual. Sin embargo, por su propia "aclaración", entonces era $1,000 de principal y cero intereses, porque sólo se pagarían aquellos "intereses a devengarse al nueve por ciento hasta su total pago."

Y si los últimos intereses se pagaron en diciembre de 1950 como el deudor dio a entender al constituir la segunda hipoteca en enero de 1951, entonces la prescripción de 20 años, con arreglo al Art. 1870 del Código Civil sólo ". . . corre desde el último pago . . . del interés." (⁴)

---

(⁴) No asistimos a la vista oral del recurso celebrada el 18 de noviembre de 1969.

En esa vista, en la parte pertinente al pago de intereses el letrado del deudor hipotecario recurrente, según el récord, se expresó así:

"Han pasado 25 años desde que venció originalmente. Nunca se pagaron intereses por ninguno de los deudores, ni por el original deudor ni por el adquirente deudor."

Cuando uno de los jueces observó: "En cuanto a la prórroga del término de prescripción basada en el pago de intereses no aparece del Registro ningún abono."

Dicho letrado del recurrente, único que asistió a la vista del caso, arguyó:

"Ah no. Esto tiene que haber un pronunciamiento judicial por ser una cuestión de hecho. Porque puede ser que diga el deudor, 'yo nunca

En otras palabras, con tal reconocimiento del pago de los intereses anteriormente devengados, el señor deudor Toro Asencio fijaba el vencimiento del plazo prescriptivo en 31 de diciembre de 1970, día por llegar.

Es cierto que la minuciosa relación que el deudor hizo de la constitución de la deuda hipotecaria en el párrafo Tercero de la parte expositiva de esa escritura, coincide en substancia con el contenido de la inscripción en el Registro de la primera hipoteca. Nos referimos, desde luego, a la primera parte del texto de ese párrafo Tercero, que empieza con las palabras "Declara el exponente" y termina, precisamente, con la frase "dicha hipoteca y su inscripción en el Registro de la Propiedad;".

Empero, el Art. 1873, al preceptuar, en parte, que la prescripción de las acciones se interrumpe *"por cualquier acto de reconocimiento* de la deuda por el deudor.", no hace excepción alguna de aquellas deudas que consten en el Registro de la Propiedad. De existir tal excepción, ¿qué impediría que ella se extendiera respecto a toda deuda, carga o gravamen que conste en cualquier escritura pública? Eso equivaldría prácticamente a dejar fuera del Art. 1873, como causa interruptora, a los reconocimientos de obligaciones inscritas, especialmente a las hipotecarias. Quedaría limitada esa causa interruptora a las contraídas oralmente o mediante documentos privados.

Ahora bien, el "aclarando", del final de ese párrafo Tercero, que, repetimos, dice:

---

he pagado intereses,' habiéndolos pagado o que diga el acreedor 'yo he cobrado intereses', sin que se hayan pagado para derrotar a uno y ganar el otro el pleito. *Es la práctica. Cada cual alega lo que le conviene.* Lo que le beneficia a sus intereses. . . . El pago de intereses no puede constar en el Registro porque son aseveraciones que se hacen en la vida corriente sin intervención de notario ni de nada. Los intereses que se pagan en un cheque, en efectivo o en un recibo o se consignan en la corte, por eso no produce, no tiene repercución en el Registro. . . ."

". . . *aclarando* aquí el compareciente [no es el Notario] que esta hipoteca que se acaba de relacionar únicamente *se halla vigente por la suma de mil dólares de principal,* e intereses *a devengarse* al nueve por ciento anual hasta su total pago." (Énfasis suplido.)

en forma alguna ello constituye "una expresión de las constancias registrales sobre el estado de cargas y gravémenes".

¿Dicen las constancias registrales que la hipoteca *se halla vigente por la suma de mil dólares* de principal? No lo dice. Lo que dice, respecto al principal, es que su cantidad es la de Mil Doscientos Cuarenta Dólares ($1,240). Para el 10 de enero de 1951, a nuestro parecer, el correcto capital de la hipoteca, era de $1,180, a base del interés contractual permisible entonces.

¿Dicen esas constancias también que los intereses hasta ese día estaban satisfechos y que sólo correspondían pagarse *los intereses a devengarse?* Tampoco lo dicen.

Cuando se aclara, se disipa y quita lo que ofusca la claridad o transparencia de una cosa; se ponen en claro y se explican las manifestaciones o expresiones previas. Aclaró pues, el deudor, en esa escritura, libre y voluntariamente, que el capital del crédito hipotecario, *que allí reconocía en todos sus detalles,* no era de $1,240, como resultaba del título de la hipoteca y también del Registro de la Propiedad, sino de $1,000. Aclaración que obviamente lo beneficiaba, tanto en cuanto al pago del principal como al de sus intereses, y que estaba designada a facilitar la obtención del nuevo préstamo, que tampoco utilizaría para honrar el compromiso paterno del 1939.

Cuando argumentaba su caso, la representación del deudor recurrente se expresó así:

"Y la declaración que *hizo el notario* al constituir la otra hipoteca de que había una hipoteca *pendiente de pago,* usando los términos que usó el propio Juez Vera Mercado." (Énfasis suplido.)

Ni el Notario Miguel A. del Toro hizo tal declaración, ni el Juez Vera Mercado afirmó que el Notario la hubiera hecho.

Los términos que usó en su resolución el juez de instancia fueron los siguientes:

"(2) Posteriormente y en 10 de enero de 1951 el demandado Ricarter [*sic*] Toro Asencio constituyó una hipoteca a favor de Juan del Carmen Soto por escritura pública *en la que se hace constar que la hipoteca a favor de Miguel Carlo Pabón únicamente se halla vigente por la cantidad de $1,000.00 de principal.*

A juicio del Tribunal estas actuaciones constituyen actos de reconocimiento de la deuda por parte del deudor hipotecario que interrumpieron el término prescriptivo de 20 años del Art. 1864 del Código Civil en relación con el 1873 del mismo cuerpo legal."

De modo que, en forma alguna, tal *"aclarando"* del deudor repite circunstancia alguna registral. Al contrario, tal "aclarando" pretende modificar unilateralmente lo que resulta del Registro, en beneficio del recurrente, pero no por ello deja de ser, junto con a primera parte del párrafo Tercero, un perfecto reconocimiento de la existencia de la deuda por el deudor.

■ Estas declaraciones, de tipo confesorio, hacen prueba contra su autor bajo el Art. 1186 del Código, aun cuando se haya hecho en ocasión de constituirse en 1951 la segunda hipoteca.

■ Por el impacto interruptor de este segundo reconocimiento, quedó borrado el tiempo ganado hasta el 10 de enero de 1951 y empezó entonces a contarse nuevamente el plazo vigesimal prescriptivo hasta el 10 de enero de 1971.

### La Tercera Interrupción

La tercera interrupción, como ya hemos dicho, consistió en las reclamaciones extrajudiciales del acreedor.

Repetimos que la sentencia recurrida, pero no impugnada, se dictó después que ambas partes, por medio de sus respectivas representaciones, en corte abierta, el 25 de junio de 1969, previa "entrevista realizada en Cámara con el Sr. Juez",

". . . *autorizan al Tribunal a dictar sentencia por las alegaciones.*"

En la exposición preliminar del caso que la Sala sentenciadora hizo en sus conclusiones, aparece que los litigantes sometieron el caso ". . . con los hechos alegados por las partes en la *demanda y en la contestación . . . .*", y, además con otra evidencia que relaciona. El recurrente, en la pág. 4 de su solicitud, afirma que en la vista del caso "las partes lo sometieron, a manera de estipulación, *por el contenido de las alegaciones (demanda y contestación)*, de los interrogatorios y de su contestación, etc. . . ."

Ya expusimos que en la demanda sobre cobro de crédito hipotecario por la vía ordinaria, radicada por doña Mercedes Aymat Vda. de Carlo, el 18 de enero de 1967—a sólo 16 años del segundo reconocimiento—se hizo la siguiente alegación, que era fundamental, esencial e indispensable, sin la cual la acción real ejercitada hubiera resultado irremediablemente prescrita:

". . . a pesar de estar la referida hipoteca vencida desde hace muchos años [nada menos que 26 años, 11 meses y 17 días a partir del 1 de febrero de 1940] todavía adeuda el demandado a la demandante la suma de $1,000.00 de principal de dicha deuda, más los intereses sobre dicha suma al 9% anual . . . *a pesar de las múltiples gestiones de cobro realizadas por la demandante por conducto de su hijo Miguel Carlo Aymat, para que se le pague la referida hipoteca y sus intereses.*" (Énfasis suplido.)

Un mes después de radicada la demanda el deudor demandado notificó a la demandante un interrogatorio, compuesto de seis preguntas sobre cuestiones, que a juzgar por

sus propias declaraciones y aclaraciones en la escritura de enero de 1951, con excepción quizá de la pregunta Núm. 2, él conocía a perfección y de memoria sus contestaciones.

No se preocupa en ese interrogatorio, a los fines de preparar su contestación a la demanda, de interrogar a la parte demandante sobre cómo, cuándo y dónde, ésta realizó las múltiples gestiones de cobro de la hipoteca alegadas en su demanda, por lo menos, para saber si tales gestiones se hicieron antes o después de consumarse algún término prescriptivo.

Tampoco pide a la parte contraria admisiones de hecho en torno a esa alegación; ni somete al hijo de la demandante mencionado en esa alegación, a una deposición sobre las significativas múltiples gestiones de cobro.

El deudor demandado radicó su contestación a la demanda el 10 de enero de 1969, unos dos años después de radicarse ésta.

Contra la alegación fundamental sobre las múltiples gestiones extrajudiciales del cobro de la deuda, conociendo cual es su propósito y consecuencia jurídica bajo el Art. 1873 del Código, *nada en contrario alegó o expuso en su contestación.*

Jamás pidió permiso para enmendar su contestación en el sentido de negar, explicar o neutralizar esa fundamental alegación de la demanda; ni en la vista del caso solicitó se le permitiera ofrecer evidencia en contra de esa alegación que ya lo obligaba en toda su virtualidad procesal porque no la había negado antes.

En esas condiciones el demandado muy bien sabía, al someter su caso por las *alegaciones de la demanda y su contestación,* que él había implícitamente aceptado que la causa de acción ejercitada en su contra, estaba en todo su vigor, no sólo debido a sus propios actos de reconocimiento, sino también a esas múltiples gestiones de cobro realizadas por la parte acreedora, no negadas por él.

*Ninguna evidencia tenía que ofrecer o aportar la actora*
*para acreditar o probar esas gestiones de cobro.* (⁵)

## La Cuarta Interrupción

Está constituida por la radicación, en tiempo oportuno
y en correcta forma procesal, de la demanda en cobro de la
deuda hipotecaria por la acción mixta, real y personal, de la
vía ordinaria, el 18 de enero de 1967, *es decir, unos cuatro*
*años antes del vencimiento del plazo de 20 años* señalado por
los Arts. 1864 del Código y 134 de la Ley.

Es cierto que cuando se radicó la demanda por la titular
del crédito hipotecario contra el dueño de la finca gravada,
estaba pendiente de despacho en el Registro la segunda soli-
citud del señor Toro Asencio para cancelar su inscripción.

Pero también es cierto que dicha demanda se radicó ante
la Sala de Mayagüez del Tribunal Superior, *unos dos años*
*después* de la fecha—2 de febrero de 1965—en que el mismo
Registrador había denegado al señor Toro Asencio la can-
celación en el Registro del mismo crédito hipotecario, pedida
por él, el 6 de noviembre de 1964, acogiéndose a dicho
Art. 388-B. Esa primera resolución negativa del Registrador
se convirtió en consentida y firme porque contra ella no
instó el señor Toro Asencio recurso gubernativo o judicial
alguno.

No había diferencia fundamental entre la primera solici-
tud y la segunda solicitud. Ambas invocaron lo dispuesto en
el Art. 388-B de la Ley y la supuesta prescripción del crédito
hipotecario. Ambas se presentaron al Registro, una en 1964
y la otra en 1966, es decir, mucho antes de transcurrir en
toda su integridad los 20 años, en 10 de enero de 1971.

---

(⁵) Gestiones de cobro las podía haber hecho la sucesión de don
Miguel Carlo Pabón a partir de febrero de 1946, por una parte y por
la otra parte, aun antes de la división, por doña Mercedes, a quien le
correspondía en el crédito su mitad ganancial.

*Del Recurso Gubernativo Actividad Positiva del Deudor*

El deudor recurrente desde el 24 de noviembre de 1946 desarrolló una actividad encaminada a mantener vigente el crédito hipotecario, y por sus propios actos, interrumpe eficazmente el término prescriptivo y sitúa su vencimiento al 10 de enero de 1971.

Su padre le entrega dinero—$1,000—para el pago del principal. No paga. Poco después, en 1951, toma $3,000 prestados en segunda hipoteca. Tampoco paga.

## *Actividad Negativa del Deudor*

En 6 de noviembre de 1964 continúa su actividad, pero entonces, no es con el resultado de mantener viva la acción hipotecaria, sino para extinguirla. Se empeña en lograr su extinción sin costo alguno. Sin pagar principal, sin satisfacer intereses, sin saldar el crédito para costas, gastos y honorarios, garantizados por su propiedad.

Se olvida entonces de que él mismo había presentado, o hecho presentar al Registro la copia de la escritura Núm. 207 de 1946, por la cual compró la finca gravada, reconociendo la hipoteca preexistente, recibiendo $1,000 de sus padres vendedores, con la obligación de pagar la hipoteca vencida, y que del Registro, constaba todo ello.

Se olvida también de su segundo reconocimiento de la existencia de la deuda, de enero de 1951, "sus declaraciones y aclaraciones", directas, claras y precisas, respecto a ese crédito hipotecario que se obligó a saldar, de que había expresado que lo debía por ser dueño de la finca hipotecada, pero que "está vigente" únicamente en cuanto a $1,000 de principal y los *"intereses a devengarse"*, hasta su total pago. Se olvida también que copia de la escritura Núm. 5, de 10 de enero de 1951, sobre constitución de segunda hipoteca, se había inscrito en el Registro y allí constaba su minucioso y pormenorizado segundo reconocimiento público y auténtico de la existencia de la deuda hipotecaria contraída por sus

padres a favor de don Miguel Carlo Pabón y especialmente, su significativa expresión de que, en ese día de enero de 1951, únicamente estaba obligado a pagar los *"intereses a devengarse hasta su pago total."*

En otras palabras, del Registro aparecía claramente que cualquier plazo prescriptivo había quedado interrumpido o borrado en enero de 1951, por acto del propio deudor y que, consecuentemente, no podía hacer uso de la potestad conferida por el Art. 388-B para solicitar la cancelación del crédito hipotecario.

En esa fecha 6 de noviembre de 1964, *pasados sólo 13 años y meses* del segundo reconocimiento, presentó el deudor Toro Asencio al Registro su primera instancia para cancelar el crédito hipotecario por el *transcurso de más de 20 años de su vencimiento*, invocando lo dispuesto en el Art. 388-B de la Ley Hipotecaria, adicionado en agosto 29 de 1923, por la Ley Núm. 12, aprobada en esa fecha, y que en los párrafos pertinentes dice:

"Cualquier persona natural o jurídica, que sea dueña de bienes inmuebles sobre los cuales pesen gravámenes hipotecarios que tengan veinte (20) años de vencidos o de constituidos, si no tuvieren vencimiento, podrá presentar a la Sala del Tribunal Superior del lugar en que radiquen los bienes o la mayor parte de ellos, una petición solicitando la cancelación de dichas hipotecas, y el juez de dicha corte ordenará la citación del acreedor para que comparezca ante la misma . . . a que exponga las razones por las cuales dichas hipotecas no deben ser canceladas.

. . . . . . . .

Transcurrido un año desde la vigencia de esta Ley, los registradores, a instancia de las personas interesadas ya indicadas, procederán a la cancelación de las hipotecas referidas en esta sección, sin necesidad de notificación alguna, si no se hubiere acreditado en el registro la interposición de la demanda en cobro de la misma o la de subsistencia de tales gravámenes."

El Registrador de San Germán requerido, procedió a calificar la instancia, y, observando lo que ya constaba en

sus libros en relación con el crédito hipotecario, se negó a cancelar su inscripción por resolución de 2 de febrero de 1965, cuyo texto es como sigue:

"La hipoteca por $1240.00 de principal a favor de Miguel Carlo Pabón, que resulta de la adjunta inscripción 17a, se pretende cancelar, por cuanto por una instancia suscrita el 6 de noviembre de 1964, por el actual dueño de esta finca Ricartter [*sic*] Toro Asencio, mayor de edad, soltero, industrial y vecino de Cabo Rojo autenticada en la misma fecha bajo affidavit número 19,055, ante el Notario Enrique Báez García, en la que se alega que dicha hipoteca venció el primero de noviembre de 1941, por lo que han transcurrido 23 años desde su vencimiento, ésta está prescrita y no aparece del Registro que el término (de) digo, para el ejercicio de la acción (prescriptiva) digo, en cobro de la hipoteca haya sido interrumpido, solicitándose su cancelación. En su virtud, pero observándose que en la inscripción vigésima de la finca, obrante al folio 151 de este tomo, practicada el 18 de enero de 1947, a virtud de la cual adquirió el actual dueño de esta finca por compra a los esposos José Toro Martínez y Filomena Asencio Irizarry, deudores originales en la hipoteca que se pretende cancelar, se hizo constar:—'Esta venta se verifica por la suma de $4,000.00, la finca de este número y ambas por cinco mil quinientos dólares, de cuya suma total el vendedor deja en poder del comprador la suma de $1000.00, para que éste cubra y pague la hipoteca a favor de Miguel Carlo Pabón que grava esta finca'; y observándose además que en la inscripción 24a de la finca, obrante al folio 121 vto. del tomo 113 de Cabo Rojo, en la cual el actual dueño de la finca y deudor en la hipoteca que se pretende cancelar, Rickártter Toro Asencio constituyó una hipoteca a favor de Juan del Carmen Soto a virtud de la escritura número cinco, otorgada el 10 de enero de 1951 ante el notario Miguel A. del Toro, se hizo constar: 'Que la hipoteca a favor de Miguel Carlo Pabón, únicamente *se halla* vigente por la cantidad de $1000.00 de principal', manifestaciones éstas que constituyen actos de reconocimiento de la deuda por parte del deudor y que interrumpieron el término prescriptivo que señala la ley, según lo resuelto en el caso de Soto vs. Registrador, Tomo 51, Página 236 de las Decisiones del Tribunal Supremo de Puerto Rico, Deniego la cancelación solicitada, porque desde la

fecha en que fue interrumpida la prescripción hasta la fecha en que fue presentado en el Registro el documento objeto de la presente, no ha transcurrido el término de 20 años que señala el Artículo 388-B de la Ley Hipotecaria, y tomo en su lugar la correspondiente anotación preventiva por término legal. Y de conformidad, firmó la presente en San Germán, a 2 de febrero de 1965. Derechos:—$1.50—Ley Núm. 67/1963. (FDO.) JUAN JUAN TORO, Registrador."

Contra esta denegatoria el señor Toro Asencio, como hemos dicho, no interpuso recurso gubernativo o judicial alguno. La consintió, convirtiéndose la misma en firme.

*Esta resolución se hizo constar por el Registrador al margen de la inscripción 17, obrante al folio 148 vto. del tomo 70 de Cabo Rojo, finca núm. 508, según Certificación en los autos.*

Dos años después de presentar la primera instancia, es decir en 30 de noviembre de 1966, intenta de nuevo el deudor Toro Asencio lograr la cancelación registral, bajo el mismo Art. 388-B. Pero vuelve a calcular mal el plazo prescriptivo. Computándolo a partir del 28 de noviembre de 1946 en que compra la finca gravada y se obliga a pagar la hipoteca, o encuentra que en 30 de noviembre de 1966, han transcurrido—olvidando cuanto ha pasado, desde luego —20 años con 2 días, no a partir del vencimiento de la hipoteca, *sino del primer reconocimiento de la existencia de la deuda hipotecaria que realizó en 28 de noviembre de 1946,* aceptando así que en 1946, al comprar y obligarse a pagar la hipoteca, *ello produjo jurídicamente la primera interrupción de la prescripción.* Se autenticó su segunda instancia ante el mismo notario, y al día siguiente, 1 de diciembre de 1966, la presentó al Registro.

Se olvidó, desde luego, del reconocimiento del 10 de enero de 1951, que había fijado el día final prescriptivo para el 10 de enero de 1971. Se olvidó, además, que él había consentido la nota denegatoria del 2 de febrero de 1965, sobre su primera instancia, que ahora se limitaba a reproducir,

con una diferencia intrascendente, es decir, que en vez de haber transcurrido sólo unos 13 años de la segunda interrupción, ahora habían transcurrido sólo unos 16 años, pero no los 20 completos, íntegros e ininterrumpidos exigidos inexorablemente por ley.

El Registrador, consecuente con su primera negativa y fundándose en las constancias del Registro, entre las cuales estaba el implícitamente confesado pago de los intereses hasta enero de 1951, vuelve a denegar la cancelación del crédito hipotecario,

". . . por observarse que desde la fecha en que fue interrumpida la prescripción hasta la fecha en que fue presentado en el Registro este documento, *no ha transcurrido el término de 20 años,* que señala el artículo 388-B de la Ley Hipotecaria. . . ."

La Ley no debe permitir, ni los buenos principios de derecho deben tolerar, que una misma persona pueda ir tantas veces contra sus propios actos, y burlarse de ellos tantas veces como convenga a sus particulares intereses.

Si del Registro aparecían constancias claras, de actos del propio deudor hipotecario, que por sus naturales efectos y consecuencias, a la luz del Art. 1873, eran calificables como causas interruptoras que impedían la cancelación por prescripción, dicho deudor no podía invocar el Art. 388-B, no obstante no aparecer allí acreditada la interposición de la demanda en cobro de la deuda o la de subsistencia de la hipoteca. No disponía de un período prescriptivo de 20 años no interrumpidos.

El Art. 100 de la Ley dispone que "los registradores calificaran bajo su responsabilidad, la legalidad de las escrituras en cuya virtud se soliciten las cancelaciones, y la capacidad de los otorgantes." La falta del transcurso continuo de todo el plazo prescriptivo, sin duda afectaba la legalidad de la operación registral interesada y hasta la capacidad jurídica del Señor Toro Asencio para solicitarla.

*Improcedencia del Recurso*

En nuestra opinión el presente recurso, incoado el 7 de abril de 1967, contra la resolución registral del 14 de marzo anterior, era improcedente.

No procedía porque la segunda instancia prematura era una simple repetición de la primera instancia de cancelación —también prematura—del mismo crédito hipotecario, que había sido denegada por la primera resolución del 2 de febrero de 1965, y de ella en ninguna forma se recurrió.

Si el deudor quería su revisión, debió haberla pedido en febrero de 1965. No podía provocar una segunda negativa, para entonces revisar, dentro del improrrogable término de 20 días, la primitiva resolución.

Este Tribunal ha resuelto que la procedencia de un recurso gubernativo no depende de la naturaleza del documento que se presente, sino de la índole de la operación que del Registrador se solicite. *Orta* v. *Registrador*, 60 D.P.R. 789 (1942). Aquí el Registrador se negó a cancelar en febrero de 1965 y, poco después, se le pide proceda, por la misma razón prescriptiva que él determinó antes no existía, a practicar la misma operación de cancelación que había denegado.

En *González* v. *Registrador*, 75 D.P.R. 366 (1953), se resolvió que no era revisable la negativa de un Registrador a corregir una anterior nota denegatoria no recurrida oportunamente.

No se trata aquí de una primera negativa motivada por la falta de determinados documentos, que ha sido consentida y, después se ha presentado de nuevo el mismo documento denegado acompañado de documentos adicionales o complementarios que suplen la deficiencia que motivó la primera negativa, como ocurrió en los casos de *Iglesia Católica* v. *Registrador*, 72 D.P.R. 847 (1951) y *Autoridad de Tierras* v. *Registrador*, 65 D.P.R. 513 (1945).

■ Consentida una negativa no puede el Supremo resolver una segunda negativa que es reiteración de la primera. *Stubbe Bros.* v. *Registrador*, 39 D.P.R. 478 (1929) ; *Robles* v. *Registrador*, 46 D.P.R. 12 (1934) ; *Echevarría* v. *Registrador*, 24 D.P.R. 87 (1916).

Desde el 1909 tenemos dicho que no son revisables o apelables las notas renovadas denegatorias de inscripción, entendiéndose consentida la nota original reproducida, *"pues si se permitiera la renovación incesante de anotaciones de títulos no inscritos por defectos insubsanables se impediría la inscripción de títulos perfectos de otras personas."* Barreras v. *Registrador*, 15 D.P.R. 556.

### La Nota Calificadora Estuvo Acertada

Se le pide al Registrador la cancelación del crédito hipotecario por el *transcurso ininterrumpido* de 20 años de su vencimiento.

Hay que aceptar desde luego, que, teórica y abstractamente, a los fines registrales, habían transcurrido mucho más de 25 años desde el vencimiento anticipado del crédito en 1ro. de febrero de 1940, o del vencimiento contractual en noviembre de 1941, hasta el 1ro. de diciembre de 1966 en que, por segunda vez se solicita del Registrador la cancelación por prescripción. (⁶)

También hay que aceptar que ni en 1964, ni en 1966, no aparecía acreditado en el Registro de la Propiedad, que se hubiera interpuesto demanda en cobro del crédito hipotecario o respecto a la subsistencia del mismo, como dice el citado Art. 388-B de la Ley Hipotecaria.

Pero ese Art. 388-B, no puede funcionar aislado y separadamente, forma parte de la Ley Hipotecaria y su Reglamento, y todos sus artículos forman parte del sistemático

---

(⁶) El recurrente jamás hizo mención en sus escritos ni en la vista oral, de la primera instancia de cancelación y su negativa registral en febrero de 1965.

conjunto de normas jurídicas sobre bienes inmuebles de que disponemos.

La función calificadora del Registrador debe ser congruente con la Ley y con los asientos del Registro, como hemos dicho en *Nido & Cía. S. en C.* v. *Registrador*, 74 D.P.R. 789 (1953); *Autoridad de Fuentes Fluviales* v. *Registrador*, 71 D.P.R. 847 (1950); *López* v. *Registrador*, 58 D.P.R. 1 (1941) y en otros casos.

Corresponde al Registrador calificar la legalidad de los documentos en cuya virtud se solicite cualquier asiento registral y la capacidad de los otorgantes, por lo que resulte de los mismos, así también por lo que resulte del Registro, ya en asientos, ya en otros documentos presentados y obrantes en él, puesto que el principio de legalidad lo obliga a actuar en tal forma que sólo figuren en el Registro los actos que sean válidos con arreglo a derecho.

Cuando el recurrente solicitó en diciembre 1ro. de 1966, por segunda vez la cancelación por el aparente transcurso de 20 años, resultaba clara y manifiestamente interrumpido tal plazo por:

1—La conducta del deudor hipotecario en la escritura de noviembre de 1946;

2—El reconocimiento—aclaración y declaración—de la existencia de la deuda en la escritura del 10 de enero de 1951, y del *pago de los intereses ya devengados hasta enero* de 1951; el Registrador no podía asumir, que lo solemnemente aclarado por el deudor, fuera incierto;

3—Lo expuesto en la nota del 2 de febrero de 1965, al margen de la inscripción 17 de la finca, en que figuran mencionados ambos actos interruptores.

Esas constancias registrales eran factores de calificación de los cuales, el Registrador, no podía prescindir. De ellas claramente resultaba que el plazo prescriptivo de 20 años no había transcurrido en su integridad.

Lo expuesto hasta aquí, apreciado o evaluado con sentido objetivo, obviamente indica que, si bien hubo cierta inactividad por ambas partes de la relación hipotecaria envuelta, los períodos de inactividad respectivos no fueron lo suficientemente prolongados para permitir que la prescripción del crédito hipotecario se consolidara.

*Se confirmarán la sentencia y la resolución registral recurridas.*

El Juez Asociado señor Martínez Muñoz no intervino.