FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,

v.

URBANIZADORA ALTOMAR, INC., et al., Defendants.

Civ. No. 86–0783(RLA).

United States District Court, D. Puerto Rico.

June 21, 1989.

---

Gabriel Hernández Rivera, Feldstein, Gelpi, Hernández & Gotay, Old San Juan, P.R., for plaintiff.

Russell A. Del Toro, Del Toro & Santana, Hato Rey, P.R., Lydia Lizarribar Masini, Santurce, P.R., and Frank Inserni, Hato Rey, P.R., for defendants.

## OPINION AND ORDER

ACOSTA, District Judge.

The Federal Deposit Insurance Corporation ("FDIC") in its corporate capacity and pursuant to 12 U.S.C. § 1811 et seq. filed its complaint in this case on May 21, 1986 seeking to foreclose various mortgages issued by the now defunct Banco Crédito y Ahorro Ponceño (Banco Crédito). The original named defendants were Urbanizadora Altomar, Inc., as judgment debtor, and Julio Aurelio Amoedo, as owner of the two properties subject to this order. The complaint was amended for the first time on July 1, 1986 (docket No. 2) to include Robhiz, Inc. as an additional defendant alleging it had purchased the two parcels in question after this action was filed.

On August 11, 1987 (docket No. 49) the FDIC moved to file a second amended complaint adding a new cause of action whereby it sought to annul the judicial sale by virtue of which Amoedo had acquired title to the aforementioned parcels of land and requesting that the Registrar of the Property be ordered to record the property in Altomar's name and the corresponding mortgage be reinstituted.

Default was entered against Altomar on March 11, 1988 (docket No. 54). Both Robhiz and Amoedo moved to dismiss the first amended complaint. The United States Magistrate on August 27, 1987 denied the leave to amend the complaint which plaintiff has appealed (docket No. 52). At this time we shall only address Robhiz's Motion to Dismiss.

As grounds for its request to dismiss the allegations against it, Robhiz alleges the FDIC is barred from instituting these proceedings based on the doctrine of res judicata. Additionally, Robhiz claims to be a "tercero registral" or "tercero hipotecario" entitled to the protection of Art. 105 of the Puerto Rico Mortgage Law of 1979, 30 L.P.R.A. § 2355.

## PRIOR PROCEEDINGS

In 1979 the FDIC filed *FDIC v. Consolidated Mortgage, et al.,* Civ. 79–2279(HL), an action for collection of monies and damages against Altomar and other corporations as well as their officers and directors alleging, inter alia, defendants were guarantors of loans issued by the Banco Crédito and that they were liable for misrepresentations in seeking and obtaining those funds.

Thereafter, on July 12, 1983, the FDIC filed an action against Altomar, *FDIC v. Urbanizadora Altomar, Inc.,* Civ. 83–1664(GG), alleging Altomar was its judgment debtor in Civ. 79–2279(HL) pursuant to a judgment entered on September 12, 1982 and that the FDIC wished to execute the aforementioned judgment upon four mortgage notes pledged by defendant to Banco Crédito. On February 27, 1984, Judge Gierbolini found the case before him (Civ. 83–1664(GG)) to be merely one of execution of the judgment previously obtained by the FDIC in Civ. 79–2279(HL) which, in his opinion, was not an independent cause of action. Judge Gierbolini further reasoned that since the previous suit was still ongoing, in furtherance of judicial efficiency, Civ. 83–1664(GG) should be dismissed. Judge Gierbolini further noted that a request by the FDIC to amend the complaint in Civ. 79–2279(HL) was still pending which would render the case before him superfluous. Judgment was entered dismissing Civ. 83–1664(GG) on March 6, 1984.

Eventually, on May 23, 1985, a directed verdict was entered against Altomar and other codefendants in Civ. 79–2279(HL).

## ARGUMENTS

### 1. *RES JUDICATA*

Robhiz argues that the FDIC is barred from prosecuting this action because it is identical to Civ. 83–1664(GG) which was already dismissed and that we are bound by the same reasoning utilized by Judge Gierbolini in dismissing the action before him.

According to Robhiz, plaintiff's only remedy to execute the mortgages at issue lies with an amendment to add a foreclosure claim to Civ. 79–2279(HL). It further points out that no attempt to include a foreclosure demand in Civ. 79–2279(HL) was ever made by the FDIC and further, that plaintiff only requested consolidation of the two suits which was denied.

According to Robhiz, the FDIC could have litigated and adjudicated the foreclosure claims previously and it is now barred by res judicata. It also contends the FDIC is barred from prosecuting this action under the doctrine of claim splitting. *Zambrana v. Tribunal Superior*, 100 D.P.R. 179 (1971).

The doctrine of res judicata has two different applications, the traditional res judicata or claim preclusion, and issue preclusion commonly referred to as collateral estoppel. In general terms, they seek to avoid relitigation of claims and issues that were previously decided or could have been litigated in former proceedings. The general policies behind these principles are to avoid the burdens and dangers inherent to repetitive litigation, to wit expenses, delay, inconsistency of rulings and promote finality.

■ Following either common law principles or Puerto Rico law, under res judicata/claim preclusion, parties are barred from instituting subsequent actions between the same parties for the same claims when these were or could have been decided in a previous action. 1B Moore's Federal Practice, para. 0.405[1]; 31 L.P.R.A. § 3343.

■ Issue preclusion/collateral estoppel is applied only to matters that were actually decided in prior proceedings by valid final disposition and in situations where it was necessary to dispose of the issue in that particular case. 18 Wright & Miller § 4416.

■ In order for either of the res judicata doctrines to take effect, the prior judgment must have disposed of the claim or issue before it "on the merits." That is, the previous ruling must have been "based on legal rights as distinguished from mere matters of practice, procedure, jurisdiction or forum." *Harper Plastics v. Amoco Chemicals Corp.*, 657 F.2d 939, 943 (7th Cir.1981) *citing Fairmont Aluminum Co. v. Commissioner*, 222 F.2d 622 (4th Cir.), *cert. denied* 350 U.S. 838, 76 S.Ct. 76, 100 L.Ed. 748 (1955); *Woosley v. Hi–Plains Harvestore, Inc.*, 550 F.Supp. 161, 165 (W.D.Okla.1981).

A subsequent action is not barred if the claim was previously rejected exclusively "on a procedural determination that the claim should be pursued in separate litigation whatever form was adopted in attempting to present the claim in the first action, whether by amendment, ... such denials of leave to advance the claim do not preclude a second action." 18 Wright & Miller § 4439 pp. 361–62 (footnote omitted).

■ The judgment must have reached the real and substantial grounds of the action as opposed to procedural matters. It must have assessed the relative merits of the claims asserted in the complaint. *Gribben v. Lucky Star Ranch Corp.*, 623 F.Supp. 952, 960 (W.D.Mo.1985). "Threshold decisions" are not on the merits and therefore, have no preclusive effect. *Gregory v. Mitchell*, 634 F.2d 205, 206 (5th Cir.1981).

■ The dismissal order in Civ. 83–1664(GG) will be thoroughly reviewed to ascertain the grounds for dismissal and examine its possible preclusive effect in these proceedings.

In Civ. 83–1664(GG) Judge Gierbolini did not go into the merits of the FDIC's claims over the properties and/or mortgages in question. He merely felt that judicial economy required that foreclosure of mortgages arising from loans already at issue in Civ. 79–2279(HL) be carried out in the older proceedings.

We find that dismissal of a complaint due to the pendency of a prior suit does not involve the substance of plaintiff's cause of action and thus, was not on the merits. We do not read the order dismissing Civ. 83–1664(GG) as one resolving the foreclosure claim or a collection issue on the merits. The dismissal was merely a procedural decision based on convenience and not on the rights of the parties. Accordingly, the doctrines of res judicata are inapposite.

### 2. *CLAIM SPLITTING*

■ Lastly, as to the allegations of claim splitting, it must be borne in mind that an entire claim must be presented in one single proceeding or else will be waived. This prevents splitting of a cause of action by using different grounds for recovery to support more than one suit. 1B Moore's Federal Practice, para. 0.410[2] pp. 363–4. The crucial factor is that it be deemed to be a single cause of action to prevent splitting into separate suits. But, "separate causes of action need not be joined, even though joinder is permitted." *Id.* at p. 366 (footnote omitted).

■ A mortgage is merely a guarantee of a debt secured by a particular property. It is axiomatic that the mortgage will exist so long as the debt remains unpaid. *Torres v. Fernández*, 47 D.P.R. 845, 848 (1934). In a mortgage credit relationship we must distinguish between the credit and the mortgage. The credit gives rise to a personal action for collection of monies which may eventually be executed upon personal property of the debtor. These proceedings will be filed against the creditor and the prayer for relief is limited to money.

■ The mortgage is the guarantee which gives rise to a mortgage foreclosure suit to collect from the very property that secured the debt. The defendant in the proceedings may or may not be the debtor. Instead, the execution will be carried out against the registered owner of the mortgaged property and the prayer in the complaint will request that the property be foreclosed to collect from the proceeds of the public auction.

■ Under Puerto Rico law, a mortgage creditor may bring three types of suits to collect a debt to wit, the summary foreclosure proceedings, civil foreclosure proceedings and an ordinary suit for collection of monies. *CRUV v. Torres Pérez*, 111 D.P.R. 698, 699–700 (1981); *see also Zaragoza v. Santiago*, 51 D.P.R. 532, 535 (1937). 30 L.P.R.A. § 2701. A mortgage creditor is not required to foreclose a mortgage note if he does not wish to. He may totally disregard this guarantee and demand payment by way of a personal suit and attach goods other than the mortgaged property to execute judgment. *Zaragoza v. Santiago*, 51 D.P.R. at 535; *Torres v. Fernández*, 47 D.P.R. at 848.

■ We find that under Puerto Rico law the FDIC, as mortgage creditor, is free to elect what proceedings it will follow to collect the monies owed. Originally, it decided to bring a personal collection action against Altomar by way of Civ. 79–2279(HL) and the prayer in the complaint filed in that case so verifies. It may now proceed to execute through this case any mortgages still outstanding.

Based on the distinction between the actions for collection of monies and foreclosure of mortgages, we find the claim splitting argument inapposite to the facts in this case.

### 3. *TERCERO REGISTRAL* BACKGROUND

In order to guarantee a promissory note from Altomar for monies lent to develop certain properties, on June 4, 1965 through deed No. 267 executed before notary public José A. Suro, Banco Crédito constituted a mortgage over several lots securing the principal amount of $3,100,000.00 plus interest, expenses and fees. Parcels No.

3563/[2494][1] and No. 3542[6326](6236)[2] each guaranteed up to $48,000.00 of the balance owed on the promissory note.

Pursuant to an action for collection of monies in *Julio Amoedo v. Urbanizadora Altomar, Inc.*, Civ. 71-3751(806) brought in the Superior Court of Puerto Rico, San Juan Part, Amoedo executed judgment on three of Altomar's properties including parcel No. 3563[24,944]; and parcel No. 3542[6326](6236). Title was passed pursuant to a judicial sale on September 15, 1982.[3]

Néstor L. Carbonell submitted petitions to the Registrar of the Property on February 3 and 4, 1986[4] requesting cancellation of the mortgage lien encumbering properties 3542[6326](6236) and 3563[24,944]. The pertinent cancellations were made on May 20, 1986.

On May 22, 1986 through deed No. 24 before notary public José Guevara Fuertes, Robhiz purchased parcels 3542[6326](6236) and 3563[24,944] from Amoedo for $50,000.00 each.

On May 21, 1986 the FDIC instituted this action Civ. 86-0783(RLA) and submitted a notice for execution of mortgage to the Registrar of the Property on May 22, 1986 for properties 3563[24,944] and 3542[6326](6236). The Registrar declined to do so because by that date the mortgages had already been cancelled.

The deed transferring these two parcels to Robhiz was presented for recordation at the Registry on May 28, 1986.

On June 24, 1986 the FDIC requested the Registrar to set aside the cancellation of the mortgage over these two parcels.

On July 21, 1986 the FDIC submitted to the Registry an attachment of these lots pursuant to Civ. 86-0783(RLA).

## ARGUMENTS

Robhiz, as present owner of these two parcels of land, alleges that he purchased these properties free of any mortgage liens and that as a "tercero registral" he is protected by his reliance in the Registry of Property to this effect.

The Registry of Property affords protection to transactions that, although ineffective by law, were made upon reliance of the contents of the Registry which turn out to be inaccurate. In order to benefit from this protection, the person must be what is known as the "tercero hipotecario" or, "a third person who, in good faith and by paying a price, validly acquires a right from a person who according to the Registry, appears with the power to convey it...." 30 L.P.R.A. § 2355. Thus, the requirements under this provision are essentially four: good faith, purchased for value, from the registered owner, and proceed to register the transaction. *See* Tomo I Roca Sastre, Derecho Hipotecario (7ma ed.) p. 647. All four criteria must be met in order to benefit from this protection. Dennis Martinez Irizarry, El Principio de Fe Pública Registral en Puerto Rico, XXVIII Revista Colegio de Abogados Núm. 4, (Agosto 1968) 719, 727.

A third party is entitled to a good faith presumption unless it is shown that he was aware of an error in the information contained in the Registry books at the time he purchased the property.[5]

The FDIC claims Robhiz, through José Hidalgo[6] was aware prior to May 22, 1986,

---

1. These are the numbers assigned to the parcels by the Registry of Property of Puerto Rico. The first numbers are the ones assigned by the Bayamón Section I Registry. The properties were eventually transferred to a new Guaynabo section and given different numbers which appear in brackets [ ]. (*See* stipulation filed by parties on November 22, 1988, docket No. 64).

2. By clerical mistake the public sale edict in Civ. 71-3751(806) identified the parcel as #6236 instead of #6326.

3. Deed number 11 executed before notary public Juan González Lassu.

4. Exhibits No. 2 and No. 3 to docket No. 22.

5. 30 L.P.R.A. § 2355 provides, in pertinent part:
   The good faith of a third party shall always be presumed unless there is proof that the inaccuracy of the Registry was known when the property was acquired.

6. Hidalgo is owner of 50 percent of the stock of Robhiz (Hidalgo's deposition pp. 10-11) (Exhibit 5 to docket No. 22).

when parcels 3563[24,944] and 3542[6326](6236) were purchased from Amoedo, that the mortgage executed on June 4, 1965 was not time barred.

To prove this, FDIC submitted the affidavit of one of its officers who attests to the fact that on or about January 31, 1986 José L. Hidalgo Irizarry was advised the mortgage collection execution date had been tolled by commencement of a judicial action (Civ. 83–1664(GG)) and the acknowledgment of debt by the mortgage debtor both in 1983 and 1984. Hidalgo acknowledges that at the meeting with FDIC personnel he was shown copy of a title search study which mentioned a request for annotation of lis pendens of Civ. 83–1664(GG).[7]

It is undisputed that, pursuant to 31 L.P.R.A. § 5294 a creditor has twenty years to execute a mortgage and that, pursuant to 31 L.P.R.A. § 5303 this term can be tolled by either filing judicial collection proceedings, extrajudicial demands for payment or the debtor's acknowledgment of the debt.

Hidalgo defends by saying that when the properties were purchased he had a good faith belief that the mortgage lien was no longer in effect. According to him, not only had the lien already been cancelled, but he understood the FDIC's position in Civ. 83–1664(GG) to be that, unless allowed to proceed to foreclose the property in that particular suit, it would be precluded from ever executing the mortgage.

However, the mere filing of a complaint tolls the statute of limitations period "regardless of the vicissitudes that may arise subsequent to the filing of the complaint, like, for example, ... when the claim is dismissed by means of a motion of nonsuit." *MOA v. E.L.A.*, 100 D.P.R. 573, 590 (1972) cited with approval in *Durán Cepeda v. Morales Lebrón*, 112 D.P.R. 623, 625 (1982).

In 1983 the FDIC filed Civ. 83–1664(GG), an action for collection of monies and foreclosure of mortgage. The fact that it was eventually dismissed does not affect its tolling effect on the mortgage action. Upon its dismissal on February 27, 1984, a new twenty-year term commenced to run anew. *Diaz de Diana v. A.J.A.S. Ins. Co.*, 110 D.P.R. 471, (1980); *Viuda de Carlo v. Toro*, 99 D.P.R. 200, 225 (1970). Thus, prior to the purchase Hidalgo was aware there had been a tolling of the statute of limitations to institute foreclosure proceedings in 1983 by the filing of Civ. 83–1664(GG). Furthermore, as we will explain below, the statute of limitations period was also tolled by the mortgage debtor's own acknowledgement of the debt both in 1983 and 1984.

On November 7, 1983 in 83–1664(GG) Urbanizadora Altomar, upon request by the FDIC acknowledged its indebtedness to the FDIC as of October 31, 1979 to be:[8]

| | |
|---|---|
| Principal | 2,819,569.19 |
| Interest | 1,331,518.53 |
| Total | 4,151,087.12 |

This debt arose from loans issued by Banco Crédito for purchase of land and construction by Altomar and are evidenced by the pertinent promissory notes.

On April 13, 1984, through deed No. 12 before notary public Jorge Cela Ureña,[9] Altomar and FDIC agreed to lower from $4,634,500.00 to $4,483,702.00 the minimum bid required for execution of the mortgage instituted by deed 267 of June 4, 1965.

In order for an acknowledgment of a debt to effectively toll the statute of limitations period, the acknowledgment must have been effected by the debtor or his authorized representative, by legal means, voluntarily and within the prescription period. *Viuda de Carlo v. Toro*, 99 D.P.R. 200, 216 (1970). All these factors have been met. The FDIC instituted foreclosure proceedings by filing this suit; Altomar, through its executive vice president, acknowledged the mortgage in a document

---

**7.** Hidalgo's deposition pp. 33–35 (Exhibit 5 to docket No. 22).

**8.** Attachment 2 to Memorandum of Law to docket No. 21.

**9.** Exhibit 13 to docket No. 22.

filed in Court[10] and also through a public deed.[11] There is no evidence to show that these acts were other than voluntary. Lastly, they were made prior to the expiration of the statute of limitations. (In 1983 and 1984).

According to the sworn statement of José L. Otero,[12] an FDIC collections officer, on January 31, 1986 he "met with José L. Hidalgo Irizarry, representing Mr. Néstor Carbonell, attorney in fact for Mr. Julio Amoedo" to discuss mortgage liens encumbering parcels owned by Mr. Amoedo and to demand payment. During that meeting Mr. Hidalgo was admonished that, unless a satisfactory payment plan was agreed upon, the FDIC would seek to execute the mortgage in question.

Mr. Hidalgo was advised that the pertinent statute of limitations for execution of mortgages had been tolled in 1983 and 1984. Mr. Hidalgo was also given copy of a title search report showing notice of commencement of foreclosure of mortgage proceedings in 1983 and advised that the mortgage liens had also been acknowledged by the previous owner and mortgage debtor in a public document in 1984. To this, Mr. Hidalgo responded by stating he was unaware of these matters and his belief that the execution of mortgage was time-barred by the statute of limitations and requested time to review the documents and respond to the FDIC.

Good faith within section 2355 means that the purchaser ignored the inaccuracy of the Registry or, put in other words, that he believed what appeared therein to be correct. *See* Roca Sastre, *supra* pp. 652–3. The purchaser must have been unaware of a situation outside the Registry that lead him to believe the contents of the Registry to be true. This is so because the rights of the "tercero hipotecario" depend on his prior knowledge of defects in his title or rights.

Robhiz does not controvert in any way the verified statement submitted by the FDIC which leads us to the conclusion that as of the January 31, 1986 meeting, Hidalgo was aware of the filing of Civ. 83–1664(GG), the November 7, 1983 acknowledgment by Altomar,[13] and the April 13, 1984 deed reducing the minimum price in the event of a foreclosure.

### SEQUENCE/DATES OF RELEVANT EVENTS

| Date | Event |
| --- | --- |
| September 15, 1982 | — Judicial sale in favor of Amoedo |
| November 7, 1983 | — Acknowledgment of debt by Altomar |
| February 27, 1984 | — Dismissal of Civ. 83–1664(GG) |
| April 13, 1984 | — Modification of minimum bid price for public sale by Altomar |
| January 31, 1986 | — Meeting between FDIC and Hidalgo |
| February 3, 1986 | — Instance ("instancia") to cancel mortgage of # 3542[6326](6236) |
| February 4, 1986 | — Instance ("instancia") to cancel mortgage of # 3563[24,944] |
| May 20, 1986 | — Mortgages cancelled |
| May 21, 1986 | — Complaint in Civ. 86–0783(RLA) filed |
| May 22, 1986 | — Notice of filing of foreclosure suit in Civ. 86–0783(RLA) |
| | — Robhiz purchases two lots |
| May 28, 1986 | — Robhiz's sale deed submitted to Registry |
| June 24, 1986 | — Instance ("instancia") by FDIC to set aside cancellation of mortgages |
| July 21, 1986 | — Attachment pursuant to Civ. 86–0783(RLA) submitted to Registry |

### CONCLUSION

■ Simply stated, Hidalgo's argument for asserting the "tercero registral" defense is that he relied (1) upon assertions made by the FDIC in a motion requesting consolidation of Civ. 79–2279(HL) with Civ. 83–1664(GG) to the effect that, unless allowed to prosecute its foreclosure claims, it would be precluded from foreclosing on the mortgage, (2) the subsequent dismissal of Civ. 83–1664(GG) and (3) the FDIC's failure to amend Civ. 79–2279(HL) to include a

---

**10.** Acknowledgment in 83–1664(GG), Attachment 2 to docket No. 21.

**11.** Exhibit 13 to docket No. 22.

**12.** Exhibit 1 to docket No. 22.

**13.** In his deposition at pp. 34–38 Hidalgo stated he reviewed the file in Civ. 83–1664(GG) (where the acknowledgment was submitted). Furthermore, it was Robhiz who submitted this particular document in this case.

claim for foreclosure.[14] We find this argument unconvincing. Prior to purchasing these two properties, he was put on notice of the three separate tolling incidents and yet he was instrumental in preparing the instance ("instancia") requesting the Registrar to cancel the mortgage.[15] Thus, he cannot claim to be a "tercero registral" because he lacked the necessary good faith belief.

We find that his reliance was not on what appeared in the Registry since he knew the period to execute mortgages had been tolled but rather on his mistaken belief that as a result of the dismissal of Civ. 83–1664(GG) the FDIC was precluded from executing the liens over these two properties. In other words, his reliance was not on the Registry's records but on legal deductions he made based on matters outside the Registry. His personal misunderstanding of the implications of the dismissal of Civ. 83–1664(GG) does not justify his reliance on the statute of limitations expiration argument for purposes of the "tercero registral."

## SUMMARY

Based on the foregoing, the Motion to Dismiss filed by Robhiz on September 10, 1986 (docket No. 7) is hereby DENIED.[16]

IT IS SO ORDERED.

---

14. *See* pages 36–38 of Hidalgo's deposition. (Exhibit 5 to docket No. 22.)

15. He acted as notary in the two instances ("instancias"). *See* deposition pages 15–16 (Exhibit 5)) to docket No. 22.

16. The Order disposes of docket Nos. 7, 22, 26, 28, 29, and 30.